# MUSA-OBREGON & ASSOCIATES
### ATTORNEYS AND COUNSELORS AT LAW
55-21 69TH STREET
MASPETH, N.Y. 11378
TEL (718) 803-1000
FAX (718) 507- 8496
musaobregonlaw@gmail.com

S. MICHAEL MUSA-OBREGON*
_____
MAYRA VELEZ*
JUAN CARLOS MONTEZA*
SUSAN N. ROSTI **
JOSHUA MATIC*

SANDERS L. DENIS*
   OF COUNSEL

NEW JERSEY OFFICE

SUSAN N. ROSTI, ESQ.
177 OUTWATER LANE
GARFIELD, NJ 07026

*Admitted only in NY. Practice in NJ limited to Immigration and Nationality Law.
**Admitted in NJ, NY

TO BE FILED UNDER SEAL

BY ECF AND HAND DELIVERY

July 23, 2008

The Honorable Gerard E. Lynch, USDJ
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

   RE: USA v. Linda Duh and Tony Duh 7-Cr-511 (GEL)

Dear Judge Lynch:

We write the Court this letter in aid of sentencing for Mr. Tony Duh and Mrs. Linda Duh, currently scheduled for sentence before Your Honor July 25th at 4 pm. While our clients are extremely contrite about their actions, we hope that the following information may assist the court in formulating a just sentence.

## FACTORS TO BE CONSIDERED UNDER 18 U.S.C. § 3553(a)

As the Court knows, the United States Supreme Court held the Sentencing Guidelines to be advisory in United States v. Booker, 125 S.Ct. 738 (2005). Although courts still Consider the Guidelines range, 18 U.S.C. § 3553(a)(4)&(5), they also must consider all of the other factors identified in 18 U.S.C. § 3553(a).  Id.  Courts no longer have to sentence a defendant within a narrow range unless an "extraordinary" circumstance removes their case from "the heartland." 3553(a) requires a court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."  These are:

   A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   C) to protect the public from further crimes of the defendant; and

    D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a) also directs courts to consider the nature and circumstances of the offense and history and characteristics of the offender, the kinds of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty for similar conduct, and the need to provide restitution to any victims of the offense.

SENTENCING DISCUSSION  AS TO TONY DUH

At the outset, we submit to the Court the thought that Mr. Duh, in the totality of his life as exemplified by his previous actions, and the words of his family, friends, and business associates, is not the typical money launderer, if there is such a thing.  A typical money launderer does not slave at his job fifteen hours days; he doesn't have to, "money easily made is easily spent".  Rather, today Mr. Duh, even after his arrest, as he has done for the last twenty years, still works fifteen hour days. However, he has taken corrective business measures -he just does not accept cash any more in his business.  If allowed to work or return to his job by Your Honor, he is not sure he ever will accept cash again or deal with Latin American customers buying any orders over $1000 dollars.  He continues his fifteen hour days from his home modest home in Bayside, Queens, after his pretrial service officer Leo Berrios checks that he gets home at 7 PM at night.  Mr. Duh poignantly recognizes that he made a grave mistake trusting other people who misrepresented themselves and their intentions, only to later realize the mistake when it was too late, since he was already enmeshed as a small cog in an international conspiracy emanating from drug dealers from afar in Latin America, far away from his tight nuclear Chinese-American family of four residing in a single family home in Bayside, Queens.
.
Tony Duh is a father of two wonderful children, Debbie Duh (19) and Anthony Duh (16), students at Boston University and the Bronx High School of Science, respectively.  He is the loving husband of Linda Duh, for whom almost twenty years ago, he eschewed corporate jobs in the computer field in order to open a grocery store in Astoria, Queens shortly after their marriage so they "could be and work together all day long".  In the garment center in Manhattan, where they opened their first import-export business several years later, Linda did the book keeping of the Latin American part of their business. They founded another company to differentiate the identity of their purchasing customers, those within the Continental United States and those who purchased for Latin American export.  They sold hair accessories, and costume plastic jewelry, and trinkets, most of which were sold by the thousands for under a dollar each.

**ANALYSIS OF FACTORS UNDER 18 U.S.C. § 3553(a)**

Clearly Mr. Duh by his plea agreement will undergo a tremendous punishment since he has stipulated that the government will forfeit $10,000,000 from him, a sum that he has never possessed himself, but that he will have to give to the government now and in the future, starting with the family's small four- unit commercial Manhattan building, appraised for several million dollars.  Taking into account the 3553(a) factors in Mr. Duh's current sentence horizon -even without considering a jail sentence – the $10,000,000 forfeiture inherently resonates with a severe and awe-inspiring respect for the law.

The plea agreement requires that Mr. Duh forfeit a colossal, nearly insurmountable amount of money.  The Duhs have further already forfeited to the government nearly $500,000 and nearly another $150,000 that was taken by government agents at their business. The $10,000,000 is not money that

Mr. Duh nor Mrs. Duh currently have or have ever themselves actually called their own, as noted in their Financial Disclosure Affidavit. Perhaps by the future fortuitous sale of the building by which they will make a considerable contribution, perhaps of several million dollars when sold, Mr. Duh will begin to pay this enormous amount. This building which was recently appraised at $2.9 mm was purchased in 2002 for $1.8 mm with a $650,000 down payment; as such, the increase in value of this asset results from appreciation from paying the monthly mortgage over time in the ever-increasing real estate market of Manhattan.

The forfeiture of $10,000,000 therefore does represent a complete financial devastation to Mr. Duh with an ominous "pyrrhic," snowball-effect; it is a financial burden that he will carry for the rest of his life. It is doubtful that he will ever regain a minimal financial foothold again. Not to mention that Mr. Duh as evidenced by his actions, has always prized being able to provide for his wife and two children; any breath of air for this wish has been extinguished by the $10,000,000 government forfeiture which he must now carry daily.

Moreover, the other goals of 3553(a) are also served because the massive financial punishment by forfeiture also promotes tremendous respect for the law and similarly recognizes a very severe punishment for this crime. Anyone considering this type of crime upon hearing of this sentence will be deterred because of the giant forfeiture involved and the recognition that any property or money derived from this type of crime will be swiftly and forcefully taken by the government.

Additionally, it is exceedingly unlikely that Mr. Duh will ever re-offend again. Mr. Duh had never spent a single day in jail in any country in the world; two parking tickets in twenty years is the extent of his prior offenses against civil society. Mr. Duh has always filed his personal and business taxes; cash deposit derived by his business were immediately deposited into his companies' bank accounts and reported to the government. The PSI is *incorrect* when it recites that the money was deposited into numerous banks. According to Mr. Duh, they only deposited cash derived from their business into two banks, Broadway National Bank (BNB) and Cathay Bank (Cathay and Great Eastern are the same entity - Great Eastern was bought out by Cathay which reassigned all new account numbers to its customers, so the accounts may appear in duplicate in government documents). The Duh's personal accounts were maintained in Commerce Bank and JP Morgan Chase. Mr. Duh has, hitherto this crime, always lived an upstanding life, pursuing the virtues and values of hard work of this great nation. With this titanic blow and shock to his life and that of his family, we submit the chances of him re-offending again are quite small.

## THE DUH CHILDREN

As intimated in the forensic report from Dr. Dumas, Anthony is undergoing great psychological suffering because of his father's potential incarceration. If the Court were to spare Mr. Duh a prison sentence, his son Anthony Duh may be able to be saved from a severe, spiraling, devastating depression that will likely ensue if his father were to be incarcerated, that could well prevent this gifted, loving child from accomplishing even a minimum of what he seeks to do in life. Although no report has been provided regarding Debbie Duh, her letter addressed to Your Honor reveals an equally disturbing, shocking jolt to her psyche as a result of her father's possible incarceration; based on conversations, she too has been severely depressed and is acutely perturbed by a lack of certainty about her educational, familial, and financial future. Suffice it to say that the children are further giving up any estate or inheritance that they were expecting from the father's future earnings that would have been useful for paying college or graduate school or other financial needs surely to face them if the father were incarcerated. The children are also listed as minority shareholders on the deed

of the Manhattan building that is being forfeited to the government and they may be required to forego their interest in the same.

It is clear that the family business would be impossible for his wife Linda to manage on her own if Mr. Duh were incarcerated; respectfully assuming *arguendo*, your Honor graciously spared her a prison sentence. As such, the family business they took more than twenty years to build would one day disappear, left in shambles, too destroyed for even the prodigious Duh children, Anthony and Debbie, to pick up the pieces.

For all of these reasons, we believe that a sentence to extended home detention with as many other stringent conditions as possible is the correct sentence for Mr. Duh. If that were possible, this family and the family business may have a chance to survive and one again pick up the pieces. With the looming forfeiture, the punishment for Mr. Duh would have met the crime for this particular defendant and his particular circumstances and the ripping apart of this special family could be avoided. For all of these reasons, we respectfully request that Your Honor sentence Mr. Tony Duh to a protracted period of home incarceration, with all the necessary fines and conditions and any other punishment that the court finds necessary under §3553(a).

## SENTENCING DISCUSSION FOR LINDA DUH

Per the plea agreement, Linda Duh has plead guilty to misprision of a felony, for having discovered that her husband was participating in money laundering activities and not having reported the same to the authorities. As such, the government intends at sentence to dismiss the other remaining counts on the indictment.

We respectfully submit that with all of the other severe punishment that Mr. Duh and Mrs. Duh will be subject to as a part of Mr. Duh's sentence, a non-incarceratory sentence of probation is the most appropriate sentence in this particular case. Taking into account the factors under 3553(a), because of the financial ramifications of her husband sentence for the entire family, the $10,000,000 forfeiture deprives Mrs. Duh as well as her husband of any financial wherewithal for many years to come. The debt to the government owed by Mr. Duh *de jure*, is also owed *de facto* by the family, and will limit all of the collective economic decisions that this family will make henceforth. Any money her husband makes in the future will necessarily go to pay the government, which will have a first-class priority lien on any money, assets, investments that Mr. Duh, as the main provider for the family will have in the future. For Mrs. Duh, a woman who has too, put in countless self-imposed fifteen hour workdays, and for whom her family has been foremost in her life, this financial burden will be severe. This burden will determine if she will have to take two or three jobs, if her children will be provided for; if they will be able to go or continue to go to college and graduate school, how they will live etc? Linda Duh's greatest love in life are her husband and children from whom she was worked to take care of during the last nearly twenty years, both as a mother and a wife and to think that she could be separated from them at their greatest hour of need is an extremely traumatic experience for her.

Ms. Duh's inability to assure her family any of those things will be potent punishment indeed. It also accurately measures the punishment for the crime she has pled guilty to, misprision of a felony. For these and all the other factors below, we most respectfully request that a sentence of probation be imposed.

Because of the tremendous financial impact of her sentence, this sentence in its totality, recognizes the severity of the offense and it fosters respect for the law. It also prevents recidivism: before Mrs.

Duh was arrested in this matter, she had never seen the inside of a jail and the undersigned can affirmatively report to this Court , that the impact of this entire penal experience ensures that she will never need to see one again. She is very, very afraid and repentant for what she did.

The following except from the PSI reports what the undersigned have observed in every single of the numerous meetings we have had at their home and place of business with Ms. Linda Duh: this experience has shaken her strength down to its core, and it is one that because of her fragile emotional make-up, she can hardly endure in public, except by breaking down into uncontrollable sobs and hysteria when discussing this family tragedy:

> The defendant reported that neither she nor anyone else in her family has ever received psychiatric treatment. During the presentence interview and our home inspection, the defendant was very distraught and cried uncontrollably. She kept repeating that she does not know what to do and that she needs someone to talk to. It appears that the defendant is unable to cope with her legal problems, the trauma suffered by her son and the threat of imprisonment. (U.S. Probation Officer Diane Plummer, PSI at paragraph 68).

Considering another factor under 3553(a), a non-incarceratory sentence will allow her to continue the medical/psychological treatment that she desperately needs that has resulted from this trauma. Should the Court mercifully spare her an incarceratory sentence, she will work very, very hard to keep this family together, to better the lives of her two, up to now, extremely promising children, and to grow into her mature years as having learned a set of extremely valuable life lessons, that you cannot learn in the business world.  We hope that this report is helpful to the Court and may highlight some of the complex human issues that we believe should inform the Court's sentencing considerations for Ms. Linda Duh.

Respectfully submitted,

S. S. Michael Musa-Obregon,
S. MICHAEL MUSA-OBREGON, ESQ.

S/ Telesforo Del Valle, Jr.
TELESFORO EL VALLE JR. , ESQ.

cc:     AUSA Glen Garrett McGorty
        Mr. Tony Duh and Mrs. Tony Duh

.